**SO ORDERED.**

**SIGNED this 15 day of January, 2009.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

IN RE:

SHEARIN FAMILY INVESTMENTS, LLC,

          Case No. 08-07082-8-JRL
          Chapter 11

    Debtor.

RBC REAL ESTATE FINANCE, INC.,    Adversary Proceeding No.
          09-00012-8-JRL

    Plaintiff,

v.

CENTURION CONSTRUCTION COMPANY,

    Defendant.

_____

## ORDER

This case came before the court on RBC Real Estate Finance, Inc. ("RBC")'s ex parte motion for injunctive relief against Centurion Construction Company ("Centurion"). On January 14, 2009, the court conducted a hearing on this matter in Raleigh, North Carolina.

### JURISDICTION AND PROCEDURE

This court has jurisdiction over the parties and the subject matter of this proceeding

pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

## UNDISPUTED FACTS

This dispute arises in the context of a two-day hearing on postpetition financing that took place in New Bern on January 5 and 6. The undisputed facts derived from that hearing that provide the background for this dispute are as follows:

1. The debtor filed for Chapter 11 relief on October 13, 2008.

2. The debtor is a North Carolina limited liability company engaged in the business of constructing and developing a waterfront, high-rise condominium project in Indian Beach, North Carolina, known as The Nautical Club (the "Project").

3. The debtor is indebted to RBC pursuant to five promissory notes related to financing the Project in the original principal amount of $32,300,000.00. These notes are secured by a deed of trust on the Project in the amount of $29,300,000.00 and a deed of trust on the Project in the amount of $3,000,000.00.

4. The outstanding balance owed by the debtor to RBC is approximately $30,000,000.00.

5. Centurion was hired as general contractor on the Project.

6. Centurion is under contract with the debtor to perform construction on the building and site work.

7. Centurion is owed approximately $3,500,000.00 for work performed on the Project prior to the debtor filing bankruptcy.

9.  On December 8, 2008, the debtor filed a motion for approval of postpetition financing.

9.  On January 5, 2009, Centurion filed a Notice of Project Shutdown, whereby Centurion promised to shutdown operations on the Project if it was not paid by the debtor or RBC for work performed by January 9, 20009.

10.  On January 6, 2009, at the conclusion of the hearing on the debtor's motion for approval of postpetition financing, RBC and the debtor reached an agreement in which RBC agreed to provide postpetition financing in the amount of approximately $6,800,000.00 toward construction of the Project. This agreement provided no funds to pay Centurion for any of the work done to date, and thus made it impossible for the debtor to offer any reasonable cure of its prepetition breach in order to assume its contract with Centurion.

11.  On January 9, 2009, Centurion ceased work on the Project.

12.  On January 13, 2009, RBC filed an adversary proceeding against Centurion and requested an emergency hearing.

## **ANALYSIS**

RBC seeks injunctive relief in the form of a temporary restraining order requiring Centurion to release property to the debtor and return the premises to a working condition. In determining whether to grant a temporary restraining order, the court must consider (1) the likelihood of irreparable harm to the plaintiff if the temporary restraining order is denied; (2) the likelihood of harm to the defendant if the restraining order is granted; (3) the likelihood that plaintiff will prevail on the merits; and (4) the public interest. Moore v. Kempthorne, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) (citing Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997)). The plaintiff bears the burden of establishing whether the court should grant a temporary

restraining order.  Id.

RBC contends that a temporary restraining order is appropriate because RBC stands to suffer irreparable harm.  Specifically, RBC alleges that the Project will incur extensive damage, including mold, mildew, and frozen pipes, as a result of Centurion's actions.  At hearing, RBC argued that Centurion placed locks on the property and cut off electricity to the Project.  RBC argued that such actions by Centurion prevented other general contractors from entering the premises and taking over construction of the Project.  RBC further argued that the lack of electricity would prevent the debtor from heating the building and would result in significant damage due to freezing temperatures forecast in Carteret County.

In response, Centurion alleges that it has in no way hindered the debtor, RBC, or any other party from entering the Project.  In support of its position, Centurion submitted an affidavit from Marshall Gurley, Centurion's Chief Executive Officer.  Pursuant to Mr. Gurley's affidavit, Centurion established that work on the Project was shut down on January 9, 2009.  On this date, Centurion established that its subcontractors entered the premises and shut down all systems, including electrical, plumbing, mechanical, and elevators.  In addition, Centurion and its subcontractors locked down all electrical devices.  Centurion further established that these actions were carried out in compliance with the North Carolina Fire Prevention Code and as required by Carteret County.  At hearing, Centurion indicated that it was willing to go back to work on the Project, but that RBC and the debtor refused to pay Centurion for work performed. Centurion further established that it could not continue work on the Project without paying its subcontractors for work performed.  Also at hearing, Centurion submitted a proposed budget showing that Centurion would resume work on the Project if RBC agreed to pay Centurion

4

Case 09-00012-8-JRL    Doc 9    Filed 01/15/09    Entered 01/15/09 12:07:36    Page 5 of 6

$830,000.00 for work performed so that it could entice its subcontractors to return.

The court finds that RBC is not entitled to injunctive relief. First, RBC fails procedurally in its motion for a temporary restraining order because it produced no evidence in support of its position. RBC alleges that Centurion has exercised control over RBC's collateral and has inhibited work on the Project by preventing the debtor or other contractors from accessing the premises. However, RBC failed to file a verified complaint or affidavits, examine a witness, or otherwise present credible evidence to support its allegations. In contrast, Centurion submitted an affidavit from Mr. Gurley establishing that Centurion shut down the project in accordance with the requirements of Carteret County. Centurion further established that it had taken no steps to disrupt the Project or hinder the debtor from hiring additional contractors. As a result, there is no credible evidence that Centurion has hindered work on the Project.

Secondly, the court finds no grounds for granting RBC request for equitable relief requiring Centurion to turn on the electricity on the Project, as it sees no chance that RBC will prevail on the merits here. RBC contends that it is effectively being held hostage by Centurion for the amount it is owed for work performed prepetition. This is simply not the case. At the hearing on approval of postpetition financing, held on January 6, 2009, Centurion indicated that it was willing to accept significantly less than the $3,500,000.00 it was owed before consenting to assumption of its construction contract and continuing work on the Project. Nonetheless, the debtor and RBC struck a deal that required Centurion to abandon the project. At the present hearing, Centurion again indicated that it would resume work on the project if RBC was willing to increase their budget by $830,000.00 to cover certain work previously performed. Once again, RBC has declined. RBC's contentions that Centurion has hindered the ability of other

5

contractors to turn on the electricity, or that Centurion has the power to turn on the electricity itself, is unsubstantiated.

Finally, the problems raised by RBC, as well as the transition costs likely to be incurred if another general contractor is hired, have been foreseeable since January 6.  At that time, RBC was well aware that Centurion was prepared to shut down work on the Project if it was not paid for some prepetition work performed.  Despite knowledge that Centurion would cease work on the Project, leading to likely cancellation of all outstanding permits and bonds, significant delay in their reissuance, likely avoidance of all warranties for work thus far performed, and substantial expense in switching to a new contractor, RBC and the debtor chose this course.  They did so in the face of credible evidence that Centurion's work on the Project has been first class and without complaint, and that both have implored Centurion to remain on the project since the filing of this case.  RBC and the debtor have the right to proceed in this fashion.  The court cannot compel postpetition financing, nor require a debtor to assume its development contract with its existing contractor.  But any irreparable harm that this project faces today as a result of the extraordinary frigid weather forecast for this area flows directly from that agreement, and not from any conduct of Centurion.  The motion for a temporary restraining order is denied.

Based on the foregoing, RBC's motion for injunctive relief is DENIED.

"END OF DOCUMENT"